Alan S. Bachman (05028)
Tyler S. Foutz (10855)
Clark B. Fetzer (1069)
FETZER | BOOTH, PC
50 West Broadway, Suite 1200
Salt Lake City, UT  84101
Telephone: (801) 328-0266
alan@mountainwestlaw.com
tyler@mountainwestlaw.com
  *Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FOX RUN I, LLC, a Utah Limited Liability Company<br><br>        Plaintiff,<br><br>vs.<br><br>SPRINGVILLE CITY, a Utah municipality,<br><br>        Defendant. | **OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**<br><br><br>Case No. 2:20-cv-00223-DBB<br><br>Judge David B. Barlow<br><br>Magistrate Dustin B. Pead |

Plaintiff, Fox Run I, LLC ("Fox Run" or "Plaintiff"), hereby respectfully submits this

Opposition to Motion to Dismiss Amended Complaint Pursuant to Rule 15(a)(2) of the Federal

Rules of Civil Procedure ("Motion"). The subject Amended Complaint is filed at Dkt. 6. Plaintiff

replies to the facts and arguments raised in Defendant's Motion as follows:

## **INTRODUCTION**

The Amended Complaint should be evaluated based on the facts alleged and whether

such facts give rise to a cause of action and/or relief to the Plaintiff. Additional facts submitted

by Defendant are not appropriately considered in this Motion.

Plaintiff has standing to bring the claims alleged, as Plaintiff owned the property at issue

when the harm occurred. Plaintiff does not seek recovery of the property. Rather, Plaintiff's

claim is for takings and loss at the time it owned and was attempting to develop the property. The Amended Complaint alleges facts which demonstrate standing to pursue all of the causes of action alleged.

The municipal Land Use Development and Management Act ("LUDMA") provision for exhausting administrative remedies does not apply to Plaintiff's state law contract claims because Defendant's ordinances do not confer authority on its Board of Adjustment to review decisions based in contract. The Amended Complaint alleges that Defendant acknowledged as much and that Plaintiff relied on that acknowledgment. Neither does the LUDMA provision apply to Plaintiff's state constitutional claims because of Defendant's acknowledgment and because those claims mirror its federal constitutional claims for which exhaustion is not required.

The contractual language does not preclude Plaintiff's claims in this action. First, there was no expressed intent, and no subjective intent at all, by Plaintiff to waive constitutionally based claims. It is well settled that such claims can only be waived by expressed intent, which certainly is not found in the contract documents. Second, there is a question of fact as to what was intended to be waived when "damages" were referenced. Third, there is a question of fact as to whether Plaintiff did in fact submit an application pursuant to the terms contemplated by the Settlement Agreement. Plaintiff's Amended Complaint alleges facts supporting the determination that Plaintiff did not waive constitutional rights and remedies, did not intend to waive any and all claims pertaining to the contract, and did perform adequately under the contract.

## RESPONSE TO STATEMENT OF FACTS

In various paragraphs of Defendant's Statement of Facts, Defendant refers to documents or other records outside the pleadings, which items are not properly reviewed or considered on a Rule 12(b) Motion to Dismiss. Plaintiff responds to the individually numbered paragraphs of Defendant's Statement of Facts as follows:

1.      Undisputed that the parties entered into a settlement agreement, the written memorialization thereof speaks for itself. A true and correct copy of the Settlement Agreement is found as Exhibit A to Dkt. 61-1. (Dkt 61, ¶14.)

2.      Undisputed that the parties entered into a settlement agreement, the written memorialization thereof speaks for itself. (*Id.*) Plaintiff alleged its understanding of the Settlement Agreement's terms as to the timing of the application, which allegations must be taken as true for the purposes of this Motion:

> Fox Run reasonably understood the Settlement Agreement provisions to indicate that a building permit application was required to be submitted within one year of the Commencement Letter, which Commencement Letter should only be issued if all matters are resolved in order for Fox Run to submit a building permit application, and such would follow the customary process of a building permit application where there can be clarifications, corrections, and the like until final issuance of the permit.

(*Id.* At ¶ 19.)

3.      Undisputed that the Trust Deed speaks for itself.

4.      Plaintiff disputes the characterization of Plaintiff's allegations in the Amended Complaint. The cited paragraphs do not support the contention raised by Defendant at paragraph 4.

5.      Disputed that Plaintiff submitted "certain materials," or that Plaintiff submitted anything other than a good faith and industry standard building permit application. Plaintiff has alleged that it submitted a Building Permit Application ("BPA") in accordance with the terms and requirements of the Settlement Agreement and that Springville accepted the application fee and the application itself. (*See* Dkt. 61 at ¶¶ 32 – 35, 37.) These allegations must be taken as true for the purposes of this Motion.

6.      Undisputed that a letter was sent by a representative of Defendant. (Dkt. 61 at ¶ 36.) However, Plaintiff has disputed the accuracy of the letter and its characterization of the documents and completeness of the BPA. (*Id.* at ¶ 37.) These allegations must be taken as true for the purposes of this Motion.

7.      Undisputed that a letter was sent, the contents of which speak for themselves. However, Plaintiff has alleged facts indicating that the content of the letter and Defendant's characterization of the BPA is incorrect. (*Id.* at ¶ 39.)

8.      Undisputed that an email was sent, the contents of which speak for themselves. However, Plaintiff has alleged facts contravening the contents and conclusions in the email, which allegations must be taken as true for the purposes of this Motion.

9.      Undisputed that a letter was sent. However, Plaintiff has alleged facts contravening the contents of the letter, which must be taken as true for the purposes of this Motion. (*Id.* at ¶¶ 41 – 44.)

10.     Paragraph 10's characterization of the parties' interactions and actions after the denial of the BPA are disputed.

11.     Undisputed.

12.     Undisputed.

13.     Undisputed that the sale occurred.

14.     Undisputed.

15.     Undisputed.

16.     Undisputed that Plaintiff was informed by BBF of the application.

## ARGUMENT

In *Porter v. Teller County Bd. of County Com'rs*, 2007 WL 1430217, at *2 (D. Colo. May

14, 2007), the Court states, with emphasis added: "Under Fed.R.Civ.P. 12(b)(6), a district court

may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." Also, *Porter, Id* at *3, with emphasis added:

> Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about
> the facts or the merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in
> conjunction with Fed. R. Civ. P 8(a). . . . Federal R. Civ. P 8(a) requires "a short
> and plain statement of the claim showing that the pleader is entitled to relief." The
> statement need not contain detailed facts, but it must "give the defendant fair notice
> of what the plaintiff's claim is and the grounds upon which it rests."

*Conley*, 355 U.S. at 47. The standard for reviewing a motion to dismiss includes that "all well-

pleaded factual allegations in the ... complaint are accepted as true and viewed in the light most

favorable to the nonmoving party." Also, "[D]ismissal under Rule 12(b)(6) is a harsh remedy

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading

but also to protect the interests of justice." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir.

2006). The complaint must "make[s it] clear exactly *who* is alleged to have done *what* to *whom,*

to provide each individual with fair notice. . . . " *Brown v. Montoya*, 662 F.3d 1152, 1162–63

(10th Cir. 2011); and *Robbins v. Okla. Ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1250 (10th

Cir.2008). And the key word is "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If there is a deficiency, a time period to cure the Complaint may be provided. *Webb v. Zampedri*, 2017 WL 2455641, at *2 (D. Utah Apr. 25, 2017). Only when amending the Complaint would be futile, should it be dismissed. *Phillips v. Layden*, 434 F. App'x 774, 775 (10th Cir. 2011). The determination of plausibility will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . ." *Windham for Marquis Properties, LLC v. Deucher*, 2018 WL 5044241, at *2 (D. Utah Oct. 17, 2018) This "ensures that a defendant is placed on notice. . . ." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Defendant has such notice.

Defendant states that a "court may consider affidavits and other documents" for subject matter jurisdiction without converting it. (Dkt 4 at pp. 10-11.) Also, analogously, s*ee Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 309–10, 323 (2007). "A court may consider affidavits and other documents to ascertain whether it has subject matter jurisdiction without converting the motion to one for summary judgment. . . ." *Pliuskaitis v. USA Swimming, Inc*., 243 F. Supp. 3d 1217, 1223 (D. Utah 2017). "[A] court may properly consider facts subject to judicial notice, state court pleadings, and matters of public record without converting a motion to dismiss into a motion for summary judgment." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013). Also, see the cases cited in footnote 1 above.

## I.     STANDING

Defendant's challenge that Plaintiff lacks standing to bring this lawsuit is without merit. Defendant asserts a lack of standing based on two issues: 1) language of the contract, and 2) the foreclosure of the subject property. Article III standing requires: 1) an injury; 2) that is causally

connected to the challenged conduct; and 3) that is likely to be redressed by a favorable decision.

*Dias v. City & Cty of Denver,* 567 P.3d 1169, 1176 (10th Cir. 2009). A copy of the contract at

issue is found at Dkt 2-1. Utah case law is clear as to the importance of construing a contract

with fairness, not arbitrarily in favor of one party over another:

> "We have stated that 'courts endeavor to **construe contracts so as not to grant one of the parties an absolute and arbitrary right to terminate a contract**.' *Resource Mgmt. Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1037 (Utah 1985). In addition, we interpret the terms of a contract **in light of the reasonable expectations of the parties,** looking to the agreement as a whole and to the circumstances, nature, and purpose. . . . **Moreover, where there is doubt about the interpretation of a contract, a fair and equitable result will be preferred over a harsh and unreasonable one ...."**

*Peirce v. Peirce*, 994 P.2d 193, 198 (Utah 2000). The reasoning of the Utah Supreme Court is

similarly stated in *UMB Bank, Natl. Assn. v. Airplanes Ltd.,* 260 F. Supp. 3d 384, 394 (S.D.N.Y.

2017): "[T]hat a construction of a contract that would give one party an unfair and unreasonable

advantage over the other, **or that would place one party at the mercy of the other**, should, if at

all possible, be avoided." (Emphasis added.) Ambiguities in contracts [settlement agreements]

can prevent a motion to dismiss. *Haynes v. Dept. of Pub. Safety*, 460 P.3d 565, 569 (Utah App.

2020). Also, *Malmsteen v. Universal Music Grp, Inc.* 2012 WL 2159281 at *6 S.D.N.Y., 2012.

Defendant's argument that there is not a remedy available as a result of the contract's

language is a completely one-sided reading of the contract, which places Plaintiff at the mercy of

Defendant. The contract provides as follows: "the rights and remedies available at law and in

equity, including but not limited to injunctive relief, specific performance and termination, but

not including damages or attorney fees." Dkt 2.1. However, the language of the contract plainly

reserves a variety of remedies and relief that would be available to Plaintiff if successful. The

court has the ability to fashion a remedy in equity, for example, which remedy was expressly

reserved by Plaintiff. Further, the term "damages" is undefined in the agreement. Damages is a very broad word. Exactly which type of damages did the parties intend to waive? Construing the contract to preclude any damages whatsoever, even damages resulting from Defendant's own actions and malfeasance, is not a reasonable or fair construction of the contract. Indeed, reading the contract that way gives Defendant carte blanche ability to act with impunity and avoid any liability for any financial or economic damages that may be caused; such a reading would significantly reduce or eliminate the purpose for which a party would enter into an agreement in the first place. As the Declaration of Steven Kelly provides, it was not his understanding that the term damages was meant to preclude any damages or to allow Defendant to act in a way that would financially damage him and have no liability whatsoever. At a minimum, the court must allow the matter to move forward in order to define what the parties' intentions and meaning were when they entered into the contract.

Plaintiff's claim for breach of covenant of good faith and fair dealing also provides a claim for redress against Defendant. There is an "implied duty that contracting parties 'refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract.'" *Young Living Essential Oils, LC v. Marin,* 2011 UT 64, ¶ 9, 266 P.3d 814; *see also Oakwood Village LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 43, 104 P.3d 1226. "To determine the legal duty a contracting party has under this covenant, the court will assess whether a 'party's actions are consistent with the agreed common purpose and the justified expectations of the other party.'" *Oakwood Village LLC,* 204 UT 101 at ¶ 43. "Whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law." *HealthBank International, LLC v. Synergy Worldwide, Inc.,* 2019

8

WL 3500896 at 6; *see also Oman v. Davis School Dist.,* 2008 UT 70, ¶ 48, 194 P.3d 956. Broad damages are available in the event of a breach of the covenant of good faith and fair dealing. *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 466 (Utah 1996); *see also Beck v. Farmers Ins. Exchange,* 701 P.2d 795 (Utah 1985). Significantly, those cases held that "consequential damages may reach beyond bare contract terms. (*Id.*) Such an approach is deemed appropriate given the wide range of damages that could result from a party's failure to act in good faith with respect to contract obligations. As such, contractual limitations on damages are not applicable to breaches of good faith and fair dealing.

The parties' contract does not limit Plaintiff's ability to seek rights and remedies available at law and equity; those items are expressly allowed to be pursued. Contract terms are not determinative as to fashioning relief under a breach of good faith and fair dealing. While Defendant correctly argues that the relationship between the duties of good faith and fair dealing are dependent on the existence of a contract between those parties, the case law cited by Plaintiff makes clear that the limitations or terms of the contract do not form the basis or limitations for such a claim. The courts were clear that while reviewing a claim for breach of covenant of good faith and fair dealing, the court was not obligated to adhere to damages or consequential damages limitations contained in the contract. Rather, the court was afforded broad authority to award damages, including consequential damages, resulting from the breach of the covenant. In short, while Plaintiff may not be entitled to "damages," whatever that term is determined to mean, as a result of Defendant's breach of the contract, the contract does not preclude or determine Plaintiff's right to recover under a breach of covenant of good faith and fair dealing.

It is readily apparent that a good faith processing of the BPA was contemplated by the parties when entering into the contract. Again, the contract required only that a BPA be timely submitted, not that approval occur within the specified timeframe. Dkt 61 ¶¶ 18-19. Indeed, it would have been nonsensical for Plaintiff to bargain for the right to submit the application if Defendant would not process the application in good faith and in accordance with its regular practices, particularly after it had accepted the application and received the application fees. Plaintiff has alleged that it would not have entered into the contract but for the expectation of good faith, and that Defendant breached the covenant of good faith and fair dealing by failing to fairly process the application in due course and also by failing to provide notice and opportunity to supplement as is almost always done on such applications. *Id.* at ¶¶102 – 104.

Instead of following normal protocols in processing Plaintiff's application, Defendant simply turned it away. *Id.* at ¶¶ 100—101. Springville's opposition pertaining to Plaintiff's breach of contract claim attempts to argue or contravene the facts alleged in the Amended Complaint, which is improper at this juncture. Plaintiff has alleged that the terms of the contract required only submission of a building permit application, which is entirely consistent with the verbiage of the Settlement Agreement, and Defendant accepted the application and related application fees. (Amended Complaint at ¶¶ 14-24.) Plaintiff has alleged that it submitted a good faith BPA or at least an application consistent with industry standards, within the time period required in the Settlement Agreement. And Defendant accepted that application and received the fees. (*Id.* at ¶¶ 27-35.) Plaintiff has alleged facts that Defendant declined to continue to process the building permit application, which was done in bad faith and/or with intent to deprive Plaintiff of the benefit of its bargain and to subvert the purpose of the Settlement Agreement. (*Id.*

at ¶ 35-38.) Although Defendant disputes these facts, they must be taken as true for purposes of this Motion. Taking the allegations of the Amended Complaint as true, Plaintiff has alleged causes of action for breach of contract and breach of covenant of good faith and fair dealing. Defendant cannot discredit or disprove those facts at this point in the litigation. Plaintiff has alleged the existence of a contract and its understanding and application of the plain terms of that contract. There are disputes of fact as to the contractual interpretation and application urged by Defendant with respect to the terms of the Settlement Agreement.

If there are ambiguities in the contract language, which according to Defendant's requested interpretation there must be, those ambiguities must be resolved by a finder of fact through discovery and so forth. The parties assert competing interpretations and understandings of their Settlement Agreement. Nothing in the pleadings or the Settlement Agreement itself supports Defendant's strained interpretation that the agreement required approval of the building permit application within the one-year time period. This is not the time for parole evidence. Plaintiff has alleged that it timely and properly submitted a good faith BPA pursuant to the Settlement Agreement's terms, and it was accepted by Defendant, which again must be taken as true and not contested. Plaintiff is and should be entitled to present its claims and evidence to a finder of fact for adjudication, including facts and evidence as to the parties' intent, understandings, and purposes for entering into the Settlement Agreement. The court cannot and should not now rule on Defendant's defenses and contradictions to Plaintiff's factual allegations. Given that Plaintiff has alleged facts which, if true, give rise to a cause of action for breach of the implied covenant, Plaintiff has alleged a claim for redress sufficient to obtain standing in this case.

Finally, Plaintiff has standing to sue on Constitution based claims. Waiving a constitutional right requires specificity. This is consistent with the requirement of "clear and unambiguous language requiring such a waiver." *Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 289 (3d Cir. 2010), as amended (Dec. 7, 2010). Consistent with this, courts presume against a waiver. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Also, *People v. Russell*, 684 N.W.2d 745, 749 (2004); and *Currier v. Virginia*, 138 S. Ct. 2144, 2162 (2018).

Plaintiff has alleged a claim for constitutional violations and seeks damages under 42 U.S.C. 1983 and 1988. The Contract does not contain any express waiver of damages pertaining to Constitutional or Federal statute-based claims. Indeed, such a waiver would necessarily have to be express, not implied, and would be explicit in its intent. If 1983 and 1988 damages and attorney fees cannot be awarded, this severely impacts realistic enforcement of constitutional rights. The Agreement does not clearly indicate that there was any intent by the parties to waive damages or attorney fees for Constitutional right violations and, again, Steven Kelly certainly did not intend to waive such.

As to the first point, Plaintiff is seeking damages for constitutional violations, not simply for Defendant's breach of the parties' settlement agreement. Plaintiff's original and amended complaint asserts damages arising from Defendant's unconstitutional taking and its violation of the Due Process and Equal Protection Clauses. United States courts have been clear that "an inferred waiver of a constitutional right is disfavored." *Brewer v. Williams*, 430 U.S. 387, 412 (1977) (Powell, J., concurring). Rather than inferred, a waiver of a constitutional right must be express. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Nothing in the settlement agreement indicates that Plaintiff waived any entitlement to damages for a constitutional violation. The Settlement Agreement enumerated several claims that were not waived and for which damages or remedies could be obtained. Defendant's argument that Plaintiff is somehow entitled to constitutional takes but not "damages" therefrom is circular and not a fair reading of both the Settlement Agreement and Constitutional rights. The lack of just compensation (or, stated differently, damages in an action such as this) is a necessary component of every unconstitutional taking. Defendant's position would result in a tacit preclusion against Plaintiff's constitutional rights and remedies even though Plaintiff did not intend and never intended to waive those rights and remedies. Without such a waiver, none of the multiple constitutional violations asserted by Plaintiff are foreclosed by the Settlement Agreement.

Second, Defendant's waiver-of-damages argument fails as to Plaintiff's duty of good faith and fair dealing claim because "[t]he duty to perform the contract in good faith cannot, by definition, be waived by either party to the agreement," and Plaintiff has alleged that Defendant acted in bad faith. *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 & n.4 (Utah 1985); *accord Patmos Energy, LLC v. SST Energy Corp.*, 2:08-CV-00166, 2009 WL 10690065, at *8 (D. Utah Dec. 29, 2009). And "no damages" clauses do not apply to bad faith conduct. *See Peirce v. Peirce*, 994 P.2d 193, 198 (Utah 2000); *Robinson v. Tripco Inv., Inc.*, 21 P.3d 219, 229 (Utah App. 2000); *Ohio Spine Network, Inc. v. Lanx, Inc.*, 2012 WL 1596915, at *2 (D. Colo. May 7, 2012); *United States Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543, 548 (Colo.App.2008).

Third, even where parties have agreed to limit damages, Utah does not enforce those provisions where the breaching party's interference with performance of the contract is "direct,

active, or willful." *Allen-Howe Specialities Corp. v. U.S. Const., Inc.*, 611 P.2d 705, 709 (Utah 1980). Plaintiff has alleged that Defendant's conduct was in bad faith and done with the intent to deprive Plaintiff of its benefits under the settlement agreement, which renders the limitation of damages provision unenforceable.

Contrary to Defendant's arguments, Plaintiff does not seek to invalidate the trustees sale, challenge the deed or procedure, or obtain return of the property. While it has not actually been adjudicated, and Plaintiff does not now concede that the purchaser was a bona fide purchaser of the property at the foreclosure sale, that is irrelevant to Plaintiff's claims. Plaintiff's claims arise from the denial and refusal to continue to process the building permit and the aftermath created by that wrongful decision.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED FOR FOX RUN'S STATE LAW OR STATE CONSTITUTIONAL CLAIMS

Defendant tacitly admits that it has no Rule 12(b)(1) or (6) basis for dismissal of Plaintiff's federal constitutional claims. In any event, *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021), and *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167- 68 (2019), make it clear there is no exhaustion requirement for takings claims based on the federal constitution.

Defendant's argument that Plaintiff's state law and state constitutional claims are barred under LUDMA should be rejected. Defendant acknowledged in the Penrod Memo that there was no administrative remedy for Defendant's rejection of the claims based on the Settlement Agreement; in any event, the Board of Adjustment lacks the authority and the qualifications to resolve appeals from decisions involving contract claims and compliance with the building code.

Defendant's argument should be rejected as to the state constitutional claims because those claims should be treated the same as the federal constitutional claims.

      A.      The Motion should be denied as to the state law contract claims

          1.      The Penrod Memo acknowledged there was no administrative remedy for the contract claims

The Penrod Memo states,

> The Board of Adjustment is limited to decisions applying the City's zoning ordinance. As such, decisions related to the settlement agreement are outside the Board of Adjustment's appeal authority. Accordingly, issues related to [the] settlement agreement, such as the requirement to submit building plans having the required building design, are not appealable to the Board of Adjustment.

The memo goes on to suggest, "[I]t may be a benefit in stipulating that your client has exhausted all administrative remedies, allowing your client to immediately challenge the . . . contract issues in district court." The Settlement Agreement is the basis for the first cause of action (breach of contract) and the second cause of action (breach of the implied covenant of good faith and fair dealing) of the Amended Complaint. Therefore, under the Penrod Memo, Defendant acknowledged that the Board of Adjustment could offer no administrative remedy for Defendant's decisions on those two claims. Plaintiff relied on that acknowledgment. The Amended Complaint alleges these facts. Dkt. 61 at 13, ¶ 39(c); id. at 22, ¶ 54(f).

Defendant has cited no authority for requiring exhaustion of administrative remedies where the government acknowledged that its appellate body lacked authority to consider an administrative appeal and was prepared to stipulate that the applicant had exhausted its administrative remedies. Plaintiff has found no such authority. Where no appellate body has authority to review the decision, seeking review is futile. And where Defendant has conceded that the Board of Adjustment lacked authority to review Defendant's decision, the Court should

conclude that Defendant waived the exhaustion requirement, as in *Elwood v. Jeter*, 386 F.3d 842, 844 n. 1 (8th Cir. 2004).[1] Even in this litigation, Defendant concedes that "the Board of Adjustment could not address whether Plaintiff's rights under the Settlement Agreement expired." Defendant's Memorandum in Opposition to Fox Run's Motion to Alter or Amend Judgment or for Relief from Judgment (Dkt. 38), p. 5.

The Court should reject Defendant's reversal of its position on exhaustion of Plaintiff's contract claims.

> 2.   The Penrod Memo was correct: the Board of Adjustment lacked the appeal authority to review the decision on Fox Run's contract claims

As this Court has noted (Dkt. 47, p. 6), the Springville City Code limits the authority of the Board of Adjustment to appeals from "decision[s] administering or interpreting the zoning ordinance." Section 11-2-305(1). Further, the City code provides that the "Board . . . may only make decisions applying the Springville City Zoning Ordinances." Section 11-2-305(2). Defendant has conceded that Plaintiff's application was incomplete because it lacked "heating and cooling load calculations, ducts design, [and] structural engineering calculations." Dkt. 4, p. 9. Those elements are not required by the zoning ordinance; they are governed by the International Building Code. As this Court has also noted (Dkt. 47, p. 3), Defendant supplemented its reasons for denying Plaintiff's application in a letter dated December 10, 2019, in which Defendant stated the application was incomplete "because of Fox Run's [alleged]

---

[1]In Dkt. 38, note 2, the Defendant seeks to distinguish *Elwood* by asserting facts that are incomplete. For example, Defendant fails to mention an email from Defendant's counsel sent six weeks after the ten-day appeal time had run, referring to "proposed alternatives to the Board of Adjustment review." Apparently Defendant continued to acknowledgment the Board's lack of authority.

failure to comply with the Settlement Agreement"—not the zoning ordinance. The Board of Adjustment was not authorized to consider an appeal from these contract-based grounds for the Defendant's decision.

LUDMA doesn't confer the missing appeal authority for contract claims. It merely defines "appeal authority" as the . . . board . . . *designated by ordinance* to decide an appeal of a decision of a land use application." Utah Code § 10-9a-103(5) (italics added). As noted above, the City code designation of the Board of Adjustment's authority does not include the review of contract claims.

3.     The contract claims in the Amended Complaint contain constitutional components

The Board of Adjustment is likewise not authorized to review land use decisions to resolve constitutional issues. The first and second causes of action in the Amended Complaint contain several constitutional components, both by incorporating prior paragraphs including 4 (supplemental jurisdiction of state law claims arising "under a common nucleus of operative facts"), 24 ("violation of constitutional provisions"), and 38 (violation of Plaintiff's constitutional rights") and by the allegations of the first and second causes of action themselves, such as paragraphs 79 ("constitutional standards"), 104 ("constitutional rights"), and 105 (same).

B.     The state constitutional claims should be treated the same as the federal constitutional claims with respect to exhaustion

Good reasons exist to treat the state constitutional claims the same as the federal constitutional claims: they arise from language essentially identical to the federal constitution and from the same operative facts, the harm to Plaintiff is the same and the Court has ruled that Defendant's decision is final and ripe, and the case authority cited by Defendant is inapposite.

Plaintiff's state constitutional claims arise out of Article 1, sections 7, 22, and 24 of the Utah Constitution. Those sections are essentially identical to the provisions of the United States Constitution on which Plaintiff's federal constitutional claims are based. Utah Constitution, Article 1, Section 7 provides, "No person shall be deprived of life, liberty or property, without due process of law." The federal counterpart is the 14th Amendment: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . ." Section 22 provides, "Private property shall not be taken or damaged for public use without just compensation"; its federal counterpart is in the 5th Amendment: ". . . nor shall private property be taken for public use, without just compensation." Section 24 provides, "All laws of a general nature shall have uniform operation." The 14th Amendment provides, ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." Section 24 "is 'generally considered the equivalent of the Equal Protection Clause of the 14th Amendment . . .'" *Gallivan v. Walker*, 2002 UT 89, ¶ 31, 54 P.3d 1069 (citation omitted). The equivalence of language and principles should result in the same treatment for both the state and federal constitutional claims.

The operative facts applicable to the state and federal constitutional claims are the same; and the Amended Complaint so alleges. Proof of both the state and federal constitutional claims will be the same. It will therefore consume no additional resources of the Court or the parties to allow facts on both kinds of constitutional claims to be developed in discovery. But for purposes of Defendant's motion, Plaintiff's allegations that Defendant acknowledged the Board of Adjustment lacked authority to decide Plaintiff's application and that Plaintiff relied on that acknowledgement—facts that directly impact the issue of exhaustion—must be taken as true.

*Pakdel* and *Knick* teach that the finality requirement for bringing a regulatory takings claim under the federal constitution "ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm.'" *Pakdel*, 141 S.Ct. 2230. Plaintiff has actually been injured by Defendant's action; that allegation must be taken as true for purposes of a motion to dismiss. And the Court has ruled that the decision causing that harm is final. Dkt. 47 at 7.

Defendant relies on two cases as authority that the exhaustion requirement "holds true for state constitutional claims" (Dkt. 62 at 20): *Patterson v. Am. Fork City*, 2003 UT 7, 67 P.3d 466 and *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, 34 P.3d 180. *Patterson* relies solely on *Nebeker* for precedent. But *Nebeker* apparently involved only state constitutional claims (see ¶ 1); no federal constitutional claims are mentioned. Plaintiff has brought both state and federal constitutional claims in the Amended Complaint. *Patterson* emphasized that plaintiffs in that case had never obtained a final decision from which they could appeal (¶ 17), whereas in this case, Plaintiff has obtained such a final decision. *Patterson* did not include two important factual elements present in this case: Defendant has acknowledged that the appeal body is not authorized to consider contract claims (which have constitutional components) and has suggested that the parties stipulate that Plaintiff had exhausted all administrative remedies. Finally, while *Patterson* recognized that exhaustion is not required for federal constitutional claims (¶ 18), it did not have before it the arguments Plaintiff makes in this case: that the state and federal constitutional claims are essentially the same, that proof of those claims is the same, that the harm Plaintiff suffered is the same, and therefore the constitutional claims should be treated the same with respect to exhaustion.

Plaintiff respectfully submits that Defendant's exhaustion arguments should be rejected and that Plaintiff be permitted to establish the merits of its claims on the facts.

### III.   FOX RUN HAS ALLEGED CLAIMS OF BREACH OF CONTRACT AND INVERSE CONDEMNAITON WHICH DESERVE TO BE ADUDICATED ON THE MERITS.

Defendant's opposition pertaining to Plaintiff's breach of contract claim attempts to argue or contravene the facts alleged in the Amended Complaint, which is improper at this juncture. Plaintiff has alleged that the terms of the contract required only submission of a building permit application, which is entirely consistent with the verbiage of the Settlement Agreement. (Amended Complaint at ¶¶ 14-24.) Plaintiff has alleged that it submitted a good faith building permit application, which application was consistent with industry standards, which application was submitted within the time period required in the Settlement Agreement, and Defendant accepted the application and related application fees. (*Id.* at ¶¶ 27-35.) Allowing Defendant to now argue against the "completeness" of the application is in contravention to the alleged facts and is inappropriate on a motion to dismiss. Plaintiff has alleged facts that Defendant declined to continue to process or approve the building permit in bad faith and/or with intent to deprive Plaintiff of the benefit of its bargain and to subvert the purpose of the Settlement Agreement. (*Id.* at ¶35-38.)

Although Defendant disputes these facts, they must be taken as true for purposes of this Motion. Defendant's argument that Plaintiff sought some sort of "contract rezoning" is inconsistent with the terms of the Settlement Agreement and certainly does not track the allegations in the complaint. Indeed, Defendant did not reject the BPA as a result of zoning arguments, but as to issues or "deficiencies" in the BPA. Plaintiff has alleged the "deficiencies"

20

identified were minor issues, which are typically allowed to be cured or supplemented as a matter of course in the normal processing of a building permit application. Taking the allegations of the Amended Complaint as true, Plaintiff has alleged causes of action for breach of contract and breach of covenant of good faith and fair dealing. Defendant cannot discredit or disprove those facts at this point in the litigation. Plaintiff has alleged the existence of a contract and its understanding and application of the plain terms of that contract. There are disputes of fact as to the contractual interpretation and application urged by Defendant with respect to the terms of the Settlement Agreement. Indeed, for the court to review Defendant's argument and apply an interpretation of the contract's terms at this juncture would be inappropriate.

Defendant correctly notes that Plaintiff alleged that the Settlement Agreement required a notice and cure period. However, Defendant ignores the fact that Plaintiff alleged that Defendant rejected and declined to continue to process the BPA without any allowance for cure or information provided as to deficiencies, which again, is almost always provided in response to the processing of a BPA in the usual course of business. Dkt. 61, ¶¶ 100-101. Further, Plaintiff alleges that it is Defendant who first breached – indeed, the only party that breached – and those allegations must be taken as true. If there are ambiguities in the contract language, which according to Defendant's requested interpretation there must be, those ambiguities must be resolved by a finder of fact through discovery and so forth. The parties assert competing interpretations and understandings of their Settlement Agreement. Nothing in the pleadings or the Settlement Agreement itself supports Defendant's strained interpretation that the agreement required approval of the building permit application within the one-year time period, but at a minimum, the interpretation of the Settlement Agreement's terms and intent has been alleged by

Plaintiff, and that interpretation must be taken as true for the purposes of this Motion. This is not the time for parole evidence. Plaintiff has alleged that it timely and properly submitted a good faith building application pursuant to the Settlement Agreement's terms, which again must be taken as true and not contested. Plaintiff is and should be entitled to present its claims and evidence to a finder of fact for adjudication, including facts and evidence as to the parties' intent, understandings, and purposes for entering into the Settlement Agreement. The court cannot and should not now rule on Defendant's defenses and contradictions to Plaintiff's factual allegations.

As to the inverse condemnation, Plaintiff's allegations in the Amended Complaint are that Defendant violated, among other things, Plaintiff's constitutional property rights. Dkt. 61 ¶ 130. It is unclear why Defendant's motion fails to mention the allegation of federal constitutional violations, in addition to state and local breaches. As such, Plaintiff's Amended Complaint states a cause of action for inverse condemnation which deserves to be weighed on its merits. Defendant's Motion to Dismiss must be denied as to these issues.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

DATED this 4th day of March 2022.

FETZER | BOOTH, PC


*/s/ Tyler S. Foutz*
Tyler S. Foutz
Clark B. Fetzer
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of March 2022, I served a true and correct copy of the foregoing by electronic court filing notification through the Court's CM/ECF system to all participants of record as follows:

- David P. Billings
  dbillings@fabianvancott.com, jwinger@fabianvancott.com, cbuhler@fabianvancott.com
- Scott R. Sabey
  ssabey@fabianvancott.com, mdonohoo@fabianvancott.com,
  mdewitt@fabianvancott.com
- Tyler S. Foutz
   tyler@mountainwestlaw.com, shellee@mountainwestlaw.com
- Alan S. Bachman, alan@mountainwestlaw.com, shellee@mountainwestlaw.com

Manual Notice List

(No manual recipients)

                    */s/ Shellee Timmreck*_____
                    Paralegal